Mr. Crop, you have the seat. Thank you, Your Honor. May it please the Court, Blake Crop on behalf of the appellant, Mark Hall. The question today for the Court is, did Mr. Hall meet the standard to waive prepayment of the filing fee under the Prison Litigation Reform Act? And the answer is yes, he did. To obtain relief from prepayment, Mr. Hall has to satisfy two elements. First, he has to plead an imminent danger of serious physical injury. And second, he must show a nexus or connection between his claims and the alleged imminent danger. After Mr. Hall satisfies both elements, his request to proceed without prepaying the filing fee should be granted. Now, the United States has already conceded that Mr. Hall met the second requirement, that his claims are connected to the imminent danger as set forth in the complaint. With the second step complete, Mr. Hall must only meet the imminent danger of serious physical injury standard. And we suggest that Mr. Hall's complaint does meet that standard. The most serious medical condition identified by Mr. Hall is a COPD and the associated respiratory illnesses, including asthma. At Joint Appendix 11, Mr. Hall stated that he has chronic asthma, chronic COPD, depletion of lung capacity to 49% without medication. I'm sorry, Counsel. I just want to make sure that I heard you. You said the most serious were which two? Sure. The most serious conditions in his complaint are the chronic COPD and the associated respiratory issues along with that. I would group those all together and call those respiratory issues on behalf of Mr. Hall. But I would use the COPD as the primary issue. And you're including in that the nodule, defining the mask in his lungs? To be honest, Your Honor, not being a doctor, I don't know if that necessarily impacts his respiratory ability to breathe. I think you said the key is not being a doctor. Right. Isn't that the whole point? You argue the case the way you want, but isn't that the whole thing that he wants? Intervention of a medical skilled person? I mean, the mask is growing, isn't it? Yes, Your Honor. Somebody tell you it's six millimeters, and you already have reduction in air capacity. I mean, it's interesting. You think that's the way you argue the case the way you want, but I noticed you didn't mention that. Fair point, Your Honor. I do believe that would be included within respiratory issues and his ability to breathe, and I would kind of encompass all those things together. Well, that's what I just want to make sure. Okay, go ahead. Can you understand you're not a doctor, but nor am I. And so tell me what we do with the idea that, you know, he had a – in 2019, they found a nodule in his lung, specifically referring to that. And then in 2020, about a month before he filed the complaint, they do a follow-up, and according to the documents your client submitted, they found the nodule to be stable. And so the complaint that that wasn't being followed up on and that it wasn't stable seems hard for me to get my head around. So why shouldn't I read those as saying the 2019 identification of the nodule was followed up in, you know, April 1st or whatever it was of 2020. He filed suit on May 7th of 2020. And so whatever we want to say, the follow-up on the nodule was done and indicated that it was stable. And so it's hard to say that's an imminent danger. Why isn't that the right way to think about the nodule? That's fair with respect to the nodule, Your Honor. I mean, it's hard for me to say that the nodule – that he was getting the requisite treatment for the nodule based on his allegations in the complaint without knowing the proper standard of care that he has to set forth. But I would kind of encompass – go back to all of the COPD issues and all of the breathing and respiratory issues would be encompassed together. And so maybe perhaps the nodule was receiving treatment. However, he wasn't receiving treatment for the other issues associated with the COPD, at least as set forth in his complaint. Counsel, I have a question. How does the recent Myers decision impact your analysis? In that case, this court actually went to a dictionary to define imminent as threatening to occur immediately, dangerously impending, or about to take place. How do the facts of your case line up with the Myers decision? Sure, Your Honor. I think Myers, in addition to a number of other circuit court decisions that the United States actually cited in their brief, addressed this issue in that the delay and denial of medical care for certain issues can qualify as an imminent danger. Now, the cases cited include Ibrahim v. District of Columbia from the D.C. Circuit, Vandiver v. Prison Health Services from the Sixth Circuit, and Brown v. Johnson from the Eleventh Circuit. All of those cases involved prisoners bringing claims primarily under the Eighth Amendment and seeking relief for failure to provide adequate medical care. All of those prisoners had hepatitis C and other associated issues for which they claimed that they were not receiving the proper treatment. And the courts all found that there was enough set forth in their complaints in order to get by the fee requirement in the Prison Litigation Reform Act, in order to say that those claims are an imminent danger of serious physical injury because the delay and denial of medical care for those conditions can cause death. Now, we would suggest that COPD has the same outcome. It's just as serious. It actually kills 150,000 Americans per year. All right. Can you stop for a second? So, you're now describing facts about COPD that I don't see in the complaint. I don't see in the record. And so, I guess I want to sort of take a step back and sort of ask a couple questions. We have medical records now that were submitted in connection with the IFP request on appeal. Those medical records were not considered by the district court in the first instance, right? Right. Tell me why we should, you know, evaluate those medical records. I mean, I just talked to you about the nodule, right? But why we should evaluate those as an initial matter and why instead we shouldn't address the nexus slash traceability? And I want to talk about that. And if we figure out that you've met that requirement or that such a requirement doesn't exist, that in fact the imminent danger of serious bodily injury is something that ought to be remanded for the district court to evaluate those records that we just got. And I understand you were not involved below, so this is in no way a critique of you. I'm just trying to understand from a court's perspective why we're looking at medical records for the first time. Sure. And so we approach the appeal based on the records that were before the district court and what it was able to review. Now, I think two separate questions are that there's a fee waiver for the appeal and there's also the fee waiver associated with the district court. I would suggest that if the court does decide that the issue should be remanded in order to review, the medical records can be forwarded back to the district court for its review. I think you hit on the fair points with respect to redressability, is that the decision of whether or not that is applicable here and if the fairly traceable relationship is established are also the two other issues that must be addressed before it can even get sent back. So can you help me under – maybe this is more for your colleague, but I'm having a little trouble. You all seem to sort of agree that there's a nexus requirement and you seem to disagree about what's required to meet that standard. For example, does it include traceability or not? But the premise of that question is that there is a nexus requirement and I can't quite figure out why there's a nexus requirement. Can you help me understand why, based on the text of 1915G or the purpose or legislative history, anything you want to point to, frankly, where the nexus requirement comes from? Sure. So there is nothing within the statute itself or the legislative history, I think, that discusses the nexus. The Myers case, as articulated by your colleague, that was the first case in the Fourth Circuit that brought up the nexus issue and addressed it in the context of the overall purpose of the Prison Litigation Reform Act to cut down on frivolous lawsuits. And I think that point was argued pretty well within that case. But, I mean, Myers is an unpublished decision that doesn't bind it. I mean, I might be persuasive, right? I understand that. And so you're, in essence, saying that the rationale provided by Mayor Myers, whichever one it is, is the rationale that you see is reasonable for inferring or creating this nexus requirement. Yeah. We do think that there should be some connection between the imminent danger of physical injury alleged by the prisoner and his claims presented. And so in Myers, we had Social Security Administration claims that were brought, and then the imminent danger was the threat from a drug lord that was totally unrelated to the Social Security claims. We're saying we do agree that there should be some connection between those, between the imminent danger and the claims presented, so at least that there is a consistency across those two issues. Well, Mr. Hall also set forth in his joint appendix that at 12, history of breathing problems, issues with the medication, severe asthma attack that required additional emergency treatment with steroids, antibiotics, and nebulizer treatments. Can I ask a follow-up question back to the imminent danger point? So the statute says that the prisoner, obviously the focus there on the prisoner, but the prisoner is under imminent danger. It doesn't say that the prisoner alleges that he's under imminent danger. Is the court required to make a factual determination that it is likely or plausible that the imminent danger exists? So, for example, if a prisoner claims that he is in imminent danger of being eaten by a Martian, the district court can reject that on its face, and I assume you agree with that, right? Yes, Your Honor. Okay. And so then the question is, what do we do in the scenario where he says, you know, I'm in danger of a growing nodule in my lung, a cancerous nodule in my lung, and the medical records submitted by the plaintiff himself are inconsistent with that, right? The nodule is not, in fact, growing. And this is a hypothetical. I'm not trying to get into the facts of this case. But, in fact, it is being evaluated and is stable. Is the district court, in that instance, required to reject the allegation of imminent danger because it's inconsistent with the unopposed facts? I think as part of the notice-putting standard and what is submitted to the district court, it can take in a totality of what is presented by the plaintiff, by the prisoner. So if that is the result of how everything appears, that they're saying that that is their imminent danger, that they have a nodule that is not being cared for, and they submit medical records showing that it is being cared for, you know, I do think that is within the court's discretion to review that in its totality to make this decision. Counsel, you would agree that in the context of a case such as this, all these circumstances, whether something is indeed an imminent danger, is driven by the facts of the particular case, so there can never be any bright-line rule.  I would agree with that, Your Honor. And if that is indeed the case, who would be in the best position to make the determination as to whether something is indeed an imminent danger or not? I think it's up to the district court and their review of the record before them at the time, at the time the application is submitted. Why do you think that, Counsel? Why do you say that? Why is the district court in a better position to determine a field that, and this is no disrespect to the district court, this is generically, in a field that none of us, appellate or trial judges, have any qualifications for? Why would that be the case? Well, I think you just hit one of the highlights of one of the issues with the analysis, is that we have the district court reviewing medical records and allegations made by prisoner applicants regarding what could be serious medical conditions without necessarily fully understanding all of the medical issues that are, you know, what they mean and what their impact is. In fact, the problem with these cases are the very person, allegedly, who has control over his life situation is also the person who has control of all their medical records. You would love to have in a civil case, you would get, you know, your Rule 26 type of submissions and have your experts to show that a nodule of this type is anything but stable. Matter of fact, it could be an indication of being malignant. We don't know that. But the key is, I assume what you're arguing, is that this is a situation where it is life-altering. Imminency in terms of medical things, that's like saying, well, you have appendicitis right now, you're symptomatic for acute abdominal pain to the right side. And also we found by your white corpuscle count, that's indication of infection. But you're not going to die yet unless it bursts. So until it bursts, then you're not imminent. That can't be the case, is it? No, Your Honor. He has to be driven by science. He has to be driven by that. Not in terms of whether or not it's whether or not you're going to die. Maybe he may – see, here's the problem. He may not – he may could live a life of 40 more years. But if you don't do something now, he may only live one year. So is that the definition is not imminent because you're going to live a year? That would be absurd, wouldn't it? Yes. I don't understand your argument. You seem to be capitulating to an incredible amount of, you know, inquiry to you about your client's case and what it really means. It's science. It's medical. The question is, should this man be able to file his case without pain? He's a ward for the government. And anybody with insurance would not be able to say, well, I got a nodule, and that's fine. It's good. It's stable. And, no, you would go out and get it. So I know he can't get health care, Cadillac health care or Mercedes or whatever you want to call it, any other car you might call it, but at least ought to have enough that's human dignity to be able to address serious chronic obstructive pulmonary disease as serious. I agree, Your Honor. We're not – I just don't understand where you're arguing the case, though, for the client. Fair enough, Your Honor. We're just trying to set forth the similarities between his case and other cases in which there were serious injuries alleged. Do you want me to – do you want to address addressability at all before I cede my time? Well, your time is up, but if you want to take a minute or so, I'll give you that. Okay. Thank you, Your Honor. So one of the questions asked, set forth by the district court, was whether or not the claims under the Federal Court Claims Act allow for Mr. Hall to obtain relief for the imminent danger set forth in his complaint. We would suggest that the court doesn't need to even reach that analysis, that there should be no redressability requirement because there's already an Article III standing requirement for prisoners to meet such that the claims that there is relief available to him for the injury as set forth in his claims. And I'll go on to – I'll let the United States go and reserve my rest of my time. Great. Thank you, Mr. Croft. Ms. Risenweber? Good morning. May it please the Court, Mr. Croft? Yes. Erin Risenweber on behalf of the affilee of the United States of America. If I may, Your Honors, I would like to begin by addressing the Article III standing requirement that counsel just brought up, seeing as he noted, as appellant noted, in their reply brief, in his reply brief, that the United States did not address the Article III standing argument in its response brief. And certainly, there is a redressability requirement that comes along with establishing Article III standing. However, appellant's argument is that because Mr. Hall already has to meet that Article III standing redressability and has met it, that there should not be a further redressability requirement in making that imminent danger analysis. Significantly, appellant cites no case law in furthering this Article III standing requirement, except to rely upon those cases which set forth Article III standing. But the redressability requirement of Article III is quite different from what the United States submits as necessary in the imminent danger analysis under the informal process statute because under appellant's argument, any well-planned complaint which meets Article III standing requirements would then also have that relation between the imminent danger alleged and the relief sought in the complaint. It happens to work in this case because we have a situation where Mr. Hall has brought a federal tort claims act or seeks to bring that before the district court and then his alleged imminent danger happens to be those same health issues of which he is complaining. However, should he have brought a federal tort claims act case and the imminent danger of which he complained was assault by the Hazleton guards, then we have a situation where even if he were permitted to proceed in form of progress on that FTCA claim, the whole purpose of why Congress sought to establish this safety valve to the three strikes rule is undercut. So can I stop you there? Because I understand the purpose argument and I think it's an excellent one to write your congressman about. But what I'm concerned about is where we're getting that out of the provision. So when I look at 1915G, it is entirely focused on the prisoner and his attributes. So it's no prisoner shall bring unless the prisoner has, referring to his past history, three prior dismissals, and then the prisoner is under. All of those focus on the prisoner and his attributes. At no point is there a reference or even an indication that the nature of the claim matters. So it's all about the prisoner and his state and not the nature of the claim. And so what I have a trouble with is the premise that you're operating under, I think actually both of you are operating under, which is you're saying that the nature of the claim must be related in some manner to the imminent danger. That's what you describe as a nexus requirement. But I just don't see that and I don't understand why, and then you want to debate about what's the scope of the nexus requirement. And the challenge for me is, I don't understand why there's a nexus requirement to begin with. Why does the claim have to relate to the imminent danger when the statute merely asks if the prisoner is under an imminent danger? Not about whether his claim relates to an imminent danger. Yes, Your Honor. And I guess that means the answer to your question would then go back to a fair reading of why the PLRA was passed in the first place and what the legislative plan was there. But not just that, what Congress's plan was in creating that safety valve in 1915. So I think there has to be, or that Congress, if you don't have that nexus. I mean, as this court... So I agree. So maybe, let me see if I can understand a little bit. So your point is, they wanted to create a safety valve and so we should read the last clause here as doing just that. And I fully agree with that. That seems to make sense. The question we have is, what is the scope of that safety valve? Everybody agrees the purpose was to create one. The question is, what is the scope for that safety valve? Does it require merely that the prisoner be under an imminent danger of serious bodily injury? In which case they can file anything they want to. Or does the prisoner have to be in imminent danger and be raising a claim that somehow relates to that imminent danger? Those are just scope questions. And I don't know how to use purpose there to determine the scope of the safety valve. That's maybe the core of my concern. Well, albeit as this panel has already noted, this is an unpublished opinion. This court in Myers noted that the imminent danger provision requires, and I quote, a relationship between the imminent danger alleged in the informed apocryphal application and the facts alleged and relief sought in the underlying claim. And our argument would be then that this court has already made a finding that there has to be a relationship, a nexus between the danger alleged and not just the facts alleged in the underlying claim but the relief sought. Counsel, maybe a simpler way of defining that would be to suggest that in the legislative prerogative that has set up this application process is that there is an attempt by the legislation itself to define what standing is in this context. And number two, that there are two ways that a prisoner could potentially get before the court. One from a general deterrence, a general imminent danger. Say they're pumping gas into the correctional facility. I'm not saying that's what's happening here. And one that is more particularized to an individual defendant and his or her imminent danger that might exist. Is that fair? That's fair. And that is what the way the statute reads is that the prisoner bringing the case is under imminent danger of serious physical injury. And that could come from two factually driven contexts. It could be something that's happening to the prison population generally and something that's happening to the prisoner individually. Certainly. But I think that the whole purpose that Congress intended in providing the safety valve, as another court has said and as the Myers court reiterated, is swallowed. If in fact that imminent danger cannot be addressed by the relief sought. So if he brings an FTCA case and is seeking to proceed and form a papyrus because of the lack of medical care, but is as his imminent danger, alleging assaults by prison guards. Then allowing him to proceed on the FTCA claim and form a papyrus doesn't ensure that that prisoner is then removed from that imminent danger. And then that's why the redressability prompt becomes so important. The United States. Council, when you start getting into the weeds that way, then you're almost requiring a mini trial, aren't you? You're requiring us to look at the merits there. A lot of determinations. Shouldn't we be, as I think Judge Richardson's question, in the sense that at least one of the options he was given, to look at whether or not there's imminent danger as to the person who wants to bring this without paying the filing fees. But it's nothing to suggest that we have to do a mini trial to determine whether or not he's going to win or whether there's redressability. Those issues, they're intertwined with merits, aren't they? I believe it's a simpler question than that, Your Honor. Well, how could it be simpler in terms of maybe a simple way to answer, but don't you have to get into the merits to some degree for that? I think it's an easier question of if there's a favorable ruling, using the example that I just put forth, if there's a favorable ruling in an FTCA claim, is that going to redress or address a situation of imminent danger regarding assaults by prison guards? Yeah, he would get some money and he could hire a physician to – he could pay for his procedure he wants done. I'm not sure that that's a realistic possibility. Why not? Why wouldn't it be? If you can afford – you mean to tell me you're a rich person, you're in prison and you can afford a transplant and we would deny it because, you know, you're in prison. You can't use your money to get a transplant that you're going to pay for? I have to tell you, Chief Judge, I don't know the answer to that question. I do not know. There's a reason why we don't know because we don't have a trial yet to determine whether or not he's going to get any money and determine what he can do and use the money for. That's what I mean. It's very intricate if you start getting down the path you're trying to lead us to. Well, in this case before the court, the United States would submit that Mr. Hall, as the district court correctly found, has not established given the facts or lack of facts presented that he is in fact under imminent danger. Well, fair enough. That's your position. I understand that. But we're back to questioning whether or not he's met that standard. When you start talking about, well, it's not repressible, then therefore we ought to look ahead and determine it's not going to be addressable as opposed to just sticking with the order of the day. Is he in imminent danger? I'm sorry. I'm not sure. No, no, no. Go ahead, counsel. You can answer my question, I think. Okay. Do you have an argument, counsel, based on the medical records that we now have before us that they fail to show that COPD and assorted respiratory issues, which I think is what your colleague pointed to, that those don't show an imminent danger of serious bodily injury? I mean, there's discussion that he had difficulty breathing because he had the flu, right, at some point, and that as a result he was coughing up things. But that sounds like the flu in 2019, not something else. I guess what I'm having trouble with is finding in these medical records any suggestion that his respiratory issues, asthma or otherwise, are an imminent danger of serious bodily injury, whatever that phrase is to me. Your Honor, I was going to start my argument with a statement because I became concerned when I heard about the medical records. I am not in possession nor have I received any of these medical records. All right. Just check ECF, right? They were filed. But that's totally fine. I mean, I understand sometimes we don't keep up with what's filed in the court, and that's fine. If you don't have a comment on it, I'm totally fine not hearing from you on it. I just wanted to know if you did what it was. No, I did not, sir. And for the record, I don't know whether they were filed under seal, but I get all of my ECF records and recently checked the bucket, and I have not received notice of the filing of the medical records. And I apologize if I indeed have overlooked something. Counsel, if I could follow up on a question by the Chief Judge. And I think that the direction that he was trying to take you is the analysis of how the Myers case may impact the determination that this court needs to consider. And I'm going to read you something from Myers, and I want to get your perspective on it. It says, Without explicitly saying so, the Myers court noted that the end result of the underlying claim must relate to the allegations of imminent danger. Do you agree or disagree with that analysis from the Myers case? I do agree with that analysis, Your Honor. Okay. And if that is indeed the case, why wouldn't we need a record to establish that connection between the underlying claim and the allegations of imminent danger? Why wouldn't we need a record to make that determination as to whether that circumstance was addressed by the district court? Why would we not need a medical record? No, an analysis of some sort to get us to the conclusion that you're trying to help us reach. And you're saying in regards to the order that was entered? Yes. Yes, in this case. Yes, ma'am. I don't disagree with that, Your Honor. The district court in this case reached a conclusion that perhaps needed to have been fleshed out a little more completely. And then if that's the case, why wouldn't a remand be more influential, for lack of a better word, than just taking your position fully? Because at this point, we would still argue that he had not, in what was submitted to the court, established that he was in imminent danger. And then that that redressability analysis that you just walked through there. But I think from listening to the questions that you heard from the court, the court seems to almost recognize that there was a consequence, not necessarily defining it as an imminent danger, but a consequence that needed to be addressed. And the consequence needing to be addressed then leads us to whether or not there's an imminent danger and whether the relief sought has a nexus between that. And with this record, can we make that determination? I'm not sure that I understand the question or the use of the word consequence. When I'm talking about consequence, I think we all recognize that the gentleman had some medical issue. Can we at least say that? Yes, Your Honor. Okay. And so next we go to the question of whether or not that medical issue leads to the determination of an imminent danger. Yes. Okay. And then once we get that, we have to take another step to determine whether the relief sought relates to that imminent danger. Correct. Okay. And so we have to do all of those things. Does this record allow us to do that? Well, you know, as we noted, you can make that fairly traceable. I mean, it is related. He's alleging that the imminent danger is, you know, all of these health issues, alleged health issues. And then the relief sought is that he wants monetary damages for this alleged lack of medical care in regards to all of these health issues. I think that part is fairly straightforward. What the district court did then was take a further step without citing the Pettus case, but then asked, because, you know, does monetary, what does a monetary award here, is it going to address this imminent danger when this individual, A is not going to have past or future medical expenses that he will have had to occur, which a lot of times in a, a healthcare tort case is the, the remedy sought, you know, an FGCA case cannot offer injunctive relief to the inmate. And, you know, and then this does go to Chief Judge Gregory's question, to which I do not know the answer, whether a BOP inmate who has the monetary means to do so can even seek outside medical assistance. If there are no further questions from the court, we simply ask that this court affirm the district court's ruling as Mr. Hall has not on the facts, alleged established that he is an imminent danger. And even if he had, he cannot establish that the claim he is bringing will redress any allegation of imminent danger. Thank you. Thank you counsel. Mr. Croft, do you have some time reserved? Yes, Your Honor. Thank you. I just want to pick up on one of your points with respect to the redressability analysis and the complications that that brings that, you know, and we highlighted this in our reply brief is that the difficulty of determining whether or not claims presented by prisoners will allow them to obtain the relief in order to escape the imminent danger of serious physical injury as the district court put forth in this case. And I think part of the, part of the issue is that that is that is a complicated analysis that does require a look at the entire record. It has to go beyond just the allegations in the complaint and possibly testimony or other medical information that may be helpful in determining that decision. So, I would agree and we would set forth that that redressability is not, should not be a part of the analysis. It should solely be whether or not the prisoner has met the imminent danger of serious physical injury standard in order to seek the fee waiver under the Prison Litigation Reform Act. Counsel, can I, can I ask you again, I want to sort of think about the record and that's both the joint entry five, which is the medical records that we were talking about earlier. Where do I go if, to find the best indication to you from your perspective that his, his COPD and associated respiratory issues were, were so serious that they posed an imminent danger of serious bodily injury? Not the legal standard, whatever that means, but what, what am I looking at? Because I see in his complaint, he makes the bold assertion that I'm in an imminent danger. And I assume that's not enough. But using the, the medical records we've got and, and or the, the complaint or affidavit, however we describe it, what's the best evidence that supports, not just that he has some, some respiratory issues, but they're, they're that serious. Sure. I would point the court to joint appendix pages 11 and 12. Those highlight some of the issues I think in the best manner. I missed all in particular joint appendix 12. He states that the Bureau of prisons ignored his repeated requests for pulmonary pulmonary consults. And also his complaint ignored his complaints that the medications that he was on regarding COPD and asthma were not working. Again, I think judge Richardson's question was a little bit more precise than that. Those are your clients assertions. What is there in the records to support this evidentiary determination that you would ask this court to reach? Fair point, your honor. We, there's nothing. Mr. Hall did not include his medical records with respect to his complaint at the time he filed his application for the fee waiver at the district court level. Without in terms of what was, before the district court, this is solely the record. Now, if there are additional records that were set forth to the circuit court, and that those records can be considered by the district court on or man, I would suggest that that would be the appropriate step. The United States has control of those records, correct? My understanding is yes, the Bureau of prisons would have Mr. Hall's medical records. Absolutely. Every one of them. I don't think that'd be a HIPAA problem either. I believe you would execute that, your honor. Yeah, I think so too. He filed, I mean, he had them and he filed them with the court. I mean, you know, now maybe, maybe the thought is that this isn't all of them. I don't know. Anyway, I understand your, your, your position. Thank you. If there are no further questions from the court, we would ask that the court would man the case to the district court for further review of the, the application for the fee waiver based upon the imminent danger of serious physical injury set forth by Mr. Hall. Thank you. Thank you, counsel. Thank you both. I note Mr. Croft that you were caught upon it. And I just want to give you a special thanks on behalf of the fourth circuit, because we depend on lawyers like yourself to take these cases and help us on these issues. We really appreciate that. And obviously, uh, Ms. Weiser, whoever also, you know, representation of the United States. Uh, we can't come down and reach it, but no, nonetheless, that we really appreciate your being here. Yeah. Hope that you will be safe and be well. Thank you so much. Thank you all. Thank you, Mr.
judges: Roger L. Gregory, Julius N. Richardson, Rossie David Alston Jr.